UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELBERT L. HEYTHALER,                        Case No. 09-CV-10267

       Plaintiff,                        Paul D. Borman
v.                                           United States District Judge

COMMISSIONER OF                              Michael Hluchaniuk
SOCIAL SECURITY,                             United States Magistrate Judge

       Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 13)

## I.     PROCEDURAL HISTORY

    A.     <u>Proceedings in this Court</u>

On April 22, 2009, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Paul D.

Borman referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of Disability

Insurance Benefits and Supplemental Security Income.  (Dkt. 3).  This matter is

currently before the Court on cross-motions for summary judgment.  (Dkt. 10, 13).

B.    Administrative Proceedings

Plaintiff filed the instant claims on November 9, 2004, alleging that he became unable to work on October 13, 2003 and later amended that date to September 25, 2004. (Dkt. 8, Tr. at 50, 235). The claim was initially disapproved by the Commissioner on February 14, 2005. (Dkt 8, Tr. at 41-45). Plaintiff requested a hearing and on May 8, 2007, plaintiff appeared with counsel before Administrative Law Judge (ALJ) John A. Ransom, who considered the case *de novo*. In a decision by the Appeals Council dated June 28, 2007, the ALJ found that plaintiff was not disabled. (Dkt. 8, Tr. at 9-20). Plaintiff requested a review of this decision on July 3, 2007. (Dkt. 8, Tr. at 7). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC- 1 and AC-2, Dkt. 8, Tr. at 6), the Appeals Council, on March 27, 2009, denied plaintiff's request for review. (Dkt. 8, Tr. at 3-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, I suggest that substantial evidence does not support the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **GRANTED**, defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.    FACTUAL BACKGROUND

### A.    ALJ's Decision

Plaintiff was 31 years of age at the time of the most recent administrative hearing. (Dkt. 8, Tr. at 18). Plaintiff's relevant work history included 9 years as a sawmill laborer, landscape laborer, lawn and fertilizer pesticide applier, heating and cooling installer, and guard/caretaker. (Dkt. 8, Tr. at 78). In denying plaintiff's claims, defendant considered status post closed head injury, a herniated disc, and hepatitis as possible bases of disability. (Dkt. 8, Tr. 14).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since September 25, 2004. (Dkt. 8, Tr. at 14). At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*. At step four,

the ALJ found that plaintiff could not perform his previous work as a sawmill laborer, landscape laborer, lawn and fertilizer pesticide applier, heating and cooling installer, and guard/caretaker. (Dkt. 8, Tr. at 18). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. *Id.*

According to the ALJ, plaintiff testified that he was unable to work due to pain, limitation of motion, and fatigue secondary to surgery on his low back. Plaintiff also reported that he had been involved in a motor vehicle accident in 2003 and sustained injuries to his back, neck and a closed head injury. He further testified that for about a year after the accident he found that he was depressed and had difficulty trying to express himself, being unable to find the right words. He underwent speech therapy and took anti-depressants for a while, but reported that they did not help him. Plaintiff was not taking any psychotropic medications at the time of the oral hearing. Plaintiff testified that he had begun having back and leg pain while he was working at the sawmill. The pain became bad enough that he had to quit working and eventually had surgery. After the surgery, the claimant testified that the pain was worse than it was before the surgery and he had pain all the way down his left leg accompanied by numbness in the leg. He had physical therapy, epidural steroid injections and has been taking narcotic pain medication.

However, he gets little relief. He rated his pain level in his back and leg at an 8 or 9 out of 10 in the morning and about a 6 of 10 after his has taken his medications and they begin to work. Plaintiff testified that he has been told not to lift more than seven pounds. He has difficulty sitting for very long and has to change positions often. When he stands he has to switch his weight from one foot to the other. He estimated that he could walk about the length of a football field. Plaintiff testified that he has muscle cramps in his legs when he walks. Plaintiff also stated that he has difficulty sleeping because of his pain and is up several times during the night because of his pain. He also testified that he lays down for about a half hour three or four times a day. Plaintiff lives with his parents. He stated that he can care for his personal needs, but has trouble doing household chores due to pain and fatigue. Whatever he does takes him longer than it did before he had his surgery. He also testified that doing any work with his arms out in front of him aggravates his pain.

According to the ALJ, the medical evidence of record establishes that plaintiff was involved in a motor vehicle accident on September 12, 2001. He sustained a closed head injury, cervical sprain and strain and possibly an injury to his left shoulder. Despite these injuries, he was able to return to work until February 2004.

In September 2004, plaintiff's pain became so bad that he required emergency lumbar laminectomy and fusion. This was done by M. Field, M.D. The MRI showed a herniated disc and it was affecting plaintiff's bladder control. Subsequent to the surgery, plaintiff reported that his pain was worse that it had been before the surgery. Plaintiff was given a series of epidural steroid injections, which did not alleviate his pain. He also underwent a course of physical therapy that included strengthening exercises.

In September 2005, plaintiff was referred to the Michigan Spine and Pain Clinic. On examination, it was found that plaintiff had significant limitation of range of motion of the lumbar spine. He had positive straight leg raising on the right, some left quadriceps weakness as well as some atrophy. He was seen on a monthly basis. His diagnoses were failed back syndrome, lumbar radiculitis and lumbago. The record also reflects a diagnosis of Hepatitis. Plaintiff was treated with another series of epidural steroid injections with some minimal relief of his symptoms. His medications included Vicodin and then he was switched to Methadone. Plaintiff had some insurance issues that made it difficult to get the treatment he needed. Plaintiff continued treatment with the Michigan Spine and Pain Clinic through April 2006, when he began treatment in Alpena at the Pain Management Clinic at Alpena General Hospital. Another thorough evaluation there in April 2006 concurred with a diagnosis of failed back syndrome. Yet

another series of injections, this time caudal injections were performed, again with limited relief.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. The ALJ acknowledged that undoubtedly, plaintiff had pain, limitation and fatigue. However, the ALJ concluded that the objective clinical evidence did not support the degree of plaintiff's pain and limitations. The records of the Michigan Spine and Pain Clinic dated August 25, 2005 revealed no neurological abnormalities. Plaintiff's reflexes were full and bilateral and his range of motion of the cervical spine was full. Plaintiff's range of motion of the lumbar spine was limited by 50% in flexion and within normal limits in all other planes. Plaintiff complained of pain during flexion and with rotation and that pain that radiated down the left lower limb. However, the range of motion of all other joints was within normal limits. Sensory testing was normal. Muscle testing was normal in all four limbs with the exception of weakness in the bilateral hip flexors and knee flexors at 4/5 in knee extension. Palpation of the cervical, thoracic and lumbosacral spine revealed no tenderness and there was no evidence of muscle spasms. There was no atrophy, asymmetry, edema or evidence of vascular compromise with the exception of atrophy in the left quadriceps muscles. Plaintiff

was able to perform orthopedic maneuvers without difficulty. Plaintiff had negative straight leg raising on the left but positive on the right. Thus, according to the ALJ, plaintiff's complaints of pain were out of proportion to the clinical evidence.

With regard to plaintiff's allegations of depression, the ALJ concluded that the record did not support a finding that this was a severe impairment as that term is defined by the Social Security Act and regulations. While plaintiff had some situational depression secondary to his physical problems, he reported that he took antidepressants for only a short period of time. At the time of the hearing, plaintiff testified that he had not taken any psychotropic medications for some time and that he has not been under the care of any mental health professional. Accordingly, the ALJ concluded that any limitation that plaintiff had with regard to his ability to perform activities of daily living is related to his medical problems and not depression. The ALJ concluded that the record supported a finding that plaintiff had a mild impairment of social functioning, but there was no evidence in the record to reflect any difficulty other than some easy of irritability. Further, the ALJ concluded that plaintiff also had only a mild impairment of his ability to maintain concentration, persistent and pace. The ALJ also found that plaintiff's limitations are more closely related to his pain and medication than depression. The ALJ also found no evidence of extended episodes of decompensation. The

Report and Recommendation
Cross-Motions for Summary Judgment
*Heythaler v. Comm'r*; Case No. 09-10267

ALJ also found that plaintiff did not have a history of one or more years' inability to function outside of a highly supportive living arrangement. As for the opinion evidence, the undersigned gave little weight to the State agency examiners because a significant amount of new and material evidence was received at the hearing that was not available to the State agency examiners. The ALJ concluded that the additional records indicate a different residual functional capacity than that found by the State agency examiners.

B.    Plaintiff's Motion for Summary Judgment

Plaintiff argues that the ALJ's decisions does not contain sufficient reasons to discount plaintiff's complaints of pain and other limitations other than reference to one record dated August 25, 2005. Plaintiff asserts that the ALJ did not follow the two step process for assessing pain as set forth in *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997) and that the record clearly corroborates plaintiff's pain complaints. Plaintiff cites cases where cervical root compression syndrome, degenerative disc disease, disc herniation, and cervical spondylosis were found to be conditions that could reasonably be expected to produce the pain alleged. Plaintiff next asserts that the ALJ failed to take into consideration the type, dosage, effectiveness, and side effects of the pain medication plaintiff was taking. Plaintiff asserts that the ALJ failed to properly assess plaintiff's mental limitations under 20

C.F.R. § 404.1520a, which requires an evaluation of an individual's ability to sustain work, using appropriate production standards.

Plaintiff points out that the VE testified that all work would be precluded when consideration was given to his testimony about his level of pain and need to lie down during the day. (Tr. 268). Plaintiff asserts that his need to lie down is supported by his back condition and need to take narcotic pain medications. The VE also testified that, assuming the plaintiff limitations and impairments as alleged and that his testimony was credible, all work would be precluded, including light and sedentary work activity. (Tr. 268).

C.    Defendant's Motion for Summary Judgment

According to the Commissioner, the record supports the ALJ's sedentary RFC finding. Specifically, the commissioner asserts that the record shows that: (1) with medication management plaintiff's pain was adequately controlled, (2) his physical exam findings were mostly mildly abnormal, (3) his latest diagnostic findings did not corroborate his claims of having disabling pain, and (4) his own treating physician rendered an opinion that he could perform sedentary level work, full-time. For example, in December 2005, plaintiff reported that he was having "good luck with his methadone" and that Darvon had been useful for his breakthrough pain relief. (Tr. 152). In April 2006, Dr. Bleiberg noted that plaintiff's methadone and Darvon had been useful in treating plaintiff's pain and

contributing to his overall ability to function. (Tr. 160). Dr. Bleiberg also noted

that plaintiff's Keppra had worked well in alleviating plaintiff's left leg numbness

and tingling. (Tr. 160). In December 2006, plaintiff was started on Methadone,

which plaintiff reported was "working fairly well" for the treatment of his chronic

low back pain. (Tr. 123-24). For example, in January 2005, Dr. Gause noted

that plaintiff had full use of his hands, with full grip. (Tr. 174). He also noted that

plaintiff had a normal gait and had no difficulty with getting on and off the exam

table, no difficulty with heel to toe walking, no difficulty with squatting, and no

difficulty with hopping. (Tr. 174). Plaintiff's straight leg raising was negative and

he had no paravertebral muscle spasm. (Tr. 174). Other than some mild limitation

in range of motion with his dorsolumbar spine flexion, range of

motion testing was normal throughout. (Tr. 175-76). Similarly, in August 2005,

Dr. Bleiberg observed that while plaintiff had some lumbar spine limitation in

range of motion, he had full muscle strength in all four extremities (except for

some hip and knee flexor weakness), no tenderness upon palpation of his spine,

and no muscle spasms. (Tr. 142). He had a normal gait and was able to heel and

toe walk without difficulty. (Tr. 142). Dr. Bleiberg did not note any changes in

subsequent exams. (Tr. 146, 148, 150, 153-54, 156, 158, 160). In October 2006,

Dr. Meinhardt observed that plaintiff walked gingerly, had limited range of motion

in his low back and hips, and reported significant tenderness in his low back, but

he could still heel and toe walk, he had normal (5/5) motor strength, and his sensory exam was normal (except for the inside of an ankle). (Tr. 129). Accordingly, the Commissioner asserts that, as the ALJ reasonably found, this objective evidence did not support plaintiff's complaints of persistent disabling pain and limitations. (Tr. 17). And while plaintiff focuses on his February 2005 lumbar MRI findings, which Dr. Bleiberg noted showed a large herniated disc at L5-S1, (Tr. 142), plaintiff fails to mention that Dr. Bleiberg's notes regarding plaintiff's subsequent lumbar MRI showed only post-operative changes at L5-S1, mild fibrosis on the left at L5-S1 with a mild degree of disc bulging in the posterior and paracentrally on the right, and no evidence of a recurrent disc herniation. (Tr. 146).

The Commissioner also points that in September 2005, plaintiff's treating physician Dr. Bleiberg assessed work restrictions for plaintiff that were consistent with the ALJ's RFC finding. Dr. Bleiberg opined that plaintiff could return to work full-time, for eight hours per day, with no lifting/pushing/carrying greater than 10 pounds. (Tr. 146). Dr. Bleiberg further opined that plaintiff should only minimally bend, twist, stoop, and kneel and that plaintiff needed a sit/stand option, as needed. (Tr. 146). However, to give plaintiff the benefit of the doubt, the ALJ credited plaintiff's testimony that he could only lift up to seven pounds. (Tr. 15-16).

As to plaintiff's claims that the ALJ failed to properly assess his mental limitations, the Commissioner points out that plaintiff applied for benefits, he made no mention of depression or any other mental impairment. (Tr. 68-69). Moreover, plaintiff had no mental health treatment after his alleged disability onset date of September 25, 2004 through the date of the ALJ's decision on June 28, 2007, which was for almost a period of three years. And, during the relevant time, plaintiff was observed to have normal concentration. (Tr. 174). While he had reported a one month period of anxiety and sleep loss, plaintiff advised Dr. Bleiberg that he believed it was due to being off of his medications for a month. (Tr. 155, 157-58). At the next visit, plaintiff reported that his anxiety was "much better than before." (Tr. 159). The very last record in the transcript shows that plaintiff explicitly denied feeling down, depressed, or hopeless. (Tr. 126). Thus, according to the Commissioner, the evidence undermines the credibility of plaintiff's allegations and supports the ALJ's finding that plaintiff was also mentally capable of performing a restricted range of sedentary work.

## III.    ANALYSIS AND CONCLUSIONS

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### B.    Credibility

The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from- though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."

*Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Not all impairments deemed "severe" in step two must be included in the hypothetical. *Griffeth*, 217 Fed.Appx. at 429. "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey*, 987 F.2d at 1235. This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476.

The ALJ's credibility finding is entitled to deference and should not be disregarded given the ALJ's opportunity to observe the plaintiff's demeanor. However, if the ALJ rejects the testimony of the plaintiff as not being credible, the ALJ must clearly state the reasons for that conclusion. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). In commenting on plaintiff's credibility as it relates to

pain symptoms, the ALJ must follow the requirements of, among other provisions,

20 C.F.R. § 404.1529 as well as SSR 96-7p. SSR 96-7p provides, in part:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p also provides guidance on the factors to be considered when evaluating

credibility:

> Assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to:
>
> * The medical signs and laboratory findings;
>
> * Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and
>
> * Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

The adjudicator must then evaluate all of this information and draw appropriate

inferences and conclusions about the credibility of the individual's statements. *Id*.

The ALJ acknowledged that undoubtedly, plaintiff had pain, limitation and

fatigue. However, the ALJ concluded that the objective clinical evidence did not

support the degree of plaintiff's pain and limitations. Thus, according to the ALJ,

plaintiff's complaints of pain were out of proportion to the clinical evidence. In his

decision, the ALJ did not analyze any of the above factors in evaluating plaintiff's

credibility. Rather, he focused solely on whether the clinical evidence supported

plaintiff's pain complaints. While the ALJ mentions these factors in his statement explaining the governing law (Tr. 15-16), he does not actually include consideration of any such factors in his analysis or conclusions regarding plaintiff's credibility. (Tr. 17).

Of particular significance are any effects plaintiff's dosage of Methadone might have on his cognitive abilities and mental limitations, his prior work record, including a return to work after his auto accident and other attempts to return to work, the intensity and frequency of his pain, and the various ineffective treatments plaintiff has undergone. The ALJ also failed to account for the consistency of plaintiff's complaints. Consistency is not determinative, but consistency should be scrutinized when taking the entire case record into consideration. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-248 (6th Cir. 2007) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."). *See e.g.*, (Tr. 140) (On 8/23/05, average pain rated at 8-9/10); (Tr. 145) (On 9/22/05, pain rated at 9/10); (Tr. 148) (On 10/20/05, pain rated at 8/10); (Tr. 150) (On 11/17/05, pain rated at 8/10); (Tr. 155) (On 2/9/06, pain rated 8/10); (Tr. 157) (On 3/14/06, pain rated at 8/10); (Tr. 159) (On 4/13/06, pain rated 7/10).

In addition, consideration should have been given to his treating physician's repeated statements that plaintiff could not undergo the full course of treatment recommended to actually improve his condition because of insurance and financial limitations. (Tr. 154) ("The patient is presently under medication management alone for his pain management: He is a self-pay and making several modalities, which could be useful but out of reach for this patient at this time. He does however have drug·prescription coverage."); (Tr. 143) ("This patient would benefit from lumbar spinal injections performed under fluoroscopy. He unfortunately has no funding for such injections. This patient would benefit from spinal decompression physical therapy/chiropractic treatment, but unfortunately has no funding for this treatment."); (Tr. 146) ("[I]t appears that financial constraints are going to prohibit the patient from acquiring a thorough workup as well as appropriate treatment for his back pain at least for the near future."); (Tr. 145) ("The patient states that his insurance will not pay for physical therapy and it will be too much for him to pay out of pocket."); (Tr. 152) ("The patient states that his insurance is not covering his TENS unit."). Dr. Bleiburg noted the vicious circle in which plaintiff found himself:

> I explained to the patient that at 29-years-of-age, it would not be my goal to have a patient on long term narcotics if there was anything we can do. Unfortunately, he is in a very difficult situation. He has no funding for the treatment that he needs. He is therefore left with a

> minimal amount of treatment that his insurance will
> cover and management with narcotics. He informed me
> that if he could work, then he could get insurance and get
> better. Unfortunately due to his pain, he cannot work.
> This is a vicious circle.  Of course, if he could get
> treatment, there would be a reasonable potential that he
> could go back to work.  He will do everything that he can
> to look for funding for his current condition.  In the
> meantime, I will move forth with treatments that are
> funded by his insurance.

(Tr. 143).  Additionally, Dr. Bleiburg also noted that the amount of pain medication plaintiff could take was limited based on his hepatitis and the effect it would have on his liver.  (Tr. 146, 149).  In the view of the undersigned, an important factor to be considered in evaluating plaintiff's credibility is his treating physician's opinion that, because of financial and insurance constraints, the treatment options offered to plaintiff were less than optimal and certainly not the most effective or beneficial.  The ALJ gave no consideration to plaintiff's inability to obtain effective treatment for his condition as recommended by his treating physician.

C.    Mental Impairment

As to an allegedly disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated.  This technique was designed to work in conjunction with the sequential evaluation process set out for the

evaluation of physical impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  Congress

laid the foundation for making disability determinations when mental impairments

are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or
> (i) of this section that an individual is not under a
> disability, in any case where there is evidence which
> indicates the existence of a mental impairment, shall be
> made only if the Commissioner has made every
> reasonable effort to ensure that a qualified psychiatrist or
> psychologist has completed the medical portion of the
> case review and any applicable residual functional
> capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the

completion of "a standard document outlining the steps of this procedure."  20

C.F.R. § 404.1520a.  The regulation further requires the standard document to be

completed and signed by a medical consultant at the initial and reconsideration

levels, but provides other options at the administrative law judge hearing level.  *Id.*

Under this procedure, the Commissioner must first make clinical findings, as

to whether the claimant has a medically determinable mental disorder specified in

one of eight diagnostic categories defined in the regulations.  *Merkel v. Comm'r of

Social Security*, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt.

404. Subpt. P, App. 1, § 12.00A.  The Commissioner must then measure the

severity of any mental disorder; that is, its impact on the applicant's ability to

work.  "This is assessed in terms of a prescribed list of functional restrictions

associated with mental disorders." *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area of functional restriction is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. *Merkel*, at *10. Under the second functional area, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id*. The third functional area, "concentration, persistence, or pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id*. The final functional area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id*.

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a five-point scale: None, mild, moderate, marked, and extreme. *Pauley v. Comm'r of Social Security*, 2008 WL 2943341, *9 (S.D. Ohio 2008). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: None, one or two, three, four or more. *Id*. "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4).

Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe. *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(d)(1). If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and that it cannot serve as the basis for a finding of disability. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder. *Merkel*, at *10, citing, 20 C.F.R. § 1520a(c)(2). The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met. *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq.* If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

With regard to plaintiff's allegations of depression, the ALJ concluded that the record did not support a finding that this was a severe impairment as that term is defined by the Social Security Act and regulations. While plaintiff had some

situational depression secondary to his physical problems, he reported that he took antidepressants for only a short period of time.  At the time of the hearing, plaintiff testified that he had not taken any psychotropic medications for some time and that he has not been under the care of any mental health professional.  Accordingly, the ALJ concluded that any limitation that plaintiff had with regard to his ability to perform activities of daily living is related to his medical problems and not depression.  The ALJ also found that plaintiff's limitations were more closely related to his pain and medication than depression.  As for the opinion evidence, the undersigned gave little weight to the State agency examiner because a significant amount of new and material evidence was received at the hearing that was not available to the State agency examiner.  The ALJ concluded that the additional records indicate a different residual functional capacity than that found by the State agency examiner.

Given the undersigned findings with respect to the ALJ's consideration of plaintiff's credibility, the undersigned also suggests that plaintiff's mental limitations be reevaluated.  The ALJ did not examine whether there were lasting cognitive effects from plaintiff's closed head injury that would affect his ability to perform sedentary work.  Moreover, while the ALJ refers to "state agency examiners" evaluations of plaintiff's mental limitations and that he was rejecting them, the ALJ does not indicate where such opinions can be found in the record.

Report and Recommendation
Cross-Motions for Summary Judgment
*Heythaler v. Comm'r*; Case No. 09-10267

There was a mental health assessment performed by a social worker at North Country Community Mental Health on November 12, 2003, approximately two years after his auto accident, which indicated an impaired immediate retention/recall, an inability to perform calculations, and a mild impairment of concentration. However, this does not appear to be the review that would normally be conducted by a state agency examiner at the initial or reconsideration[2] stage of the agency's decision-making process, given that it is dated over a year before the initial decision and is it unclear whether this is one of the "state agency examiners" to which the ALJ refers.

In addition, the undersigned suggests that the effect of plaintiff's use of methadone on his cognitive abilities and mental impairment should be considered. Common side effects of methadone include anxiety, insomnia, and drowsiness, of which plaintiff complained to Dr. Bleiburg. (Tr. 140) (problems with anxiety and panic attacks noted on 8/23/05); (Tr. 157) (problems with anxiety and sleep loss reported on 3/14/06); (Tr. 198) (Difficulty relaxing sufficiently to go to sleep and stay asleep reported on FIA ADL worksheet dated 11/3/04). While the ALJ

---

[2] As the Sixth Circuit has recently held, a social security disability case should not be remanded simply because an agency did not follow its own procedures unless the plaintiff "has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers v. Comm'r*, 582 F.3d 647, 654 (6th Cir. 2009). Failure to complete such a form at the initial or reconsideration level may not be a sufficient basis for remanding this case, however, this does not form the basis for the undersigned's recommendation.

concluded that plaintiff's mental limitations were more likely related to his pain and medications that actual depression, the ALJ did not explain why this made the limitations somehow less of an impairment to plaintiff. Moreover, since the ALJ did not properly and fully analyze plaintiff's credibility as it related to his medications and the effect of his pain, this poses another reason for the ALJ to re-evaluate plaintiff's mental impairments on remand. Similarly, the ALJ concluded that plaintiff's impairments as to his activities of daily living were more related to his pain, but did not explain how his activities of daily living were impacted less because of this conclusion.

Finally, the ALJ found that plaintiff's mental limitations were not significant because he was not taking psychotropic medication. There is evidence in the record that long-term use of Paxil was recommended, as well as follow up treatment with a neurologist. (Tr. 203). It is not clear when or why plaintiff stopped taking Paxil, or whether he stopped due to financial reasons. It is also not clear whether he treated with a neurologist. The ALJ gave no consideration as to whether and to what extent plaintiff's mental impairments impacted both his capacity to seek treatment regularly or to comply with recommended treatment. *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). And, the failure to seek treatment for a period of time

may be a factor to be considered against a claimant, *Hale v. Sec'y of Health and Hum. Serv.*, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy her condition, *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990). The ALJ also gave no consideration to whether and to what extent that plaintiff's financial situation impaired his ability to obtain regular treatment or to comply with recommended treatments. For these reasons, the undersigned suggests that the ALJ should re-evaluate plaintiff's mental impairments on remand.

### D.    Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, was not within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is unsupported by substantial evidence. While this record may not justify a remand for an award of benefits, *see Faucher v. Sec'y of Health and Human Serv.*, 17 F.3d 171, 176 (6th Cir. 1994),[3] a remand is nonetheless required.

---

[3] "If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits *only if* all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176 (emphasis added).

## IV.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **GRANTED**, defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 30, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on July 30, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kenneth F. Laritz, Vanessa Miree Mays, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov